OPINION OF THE COURT
Meyer, J.
Evidence concerning sales of narcotics other than that for which defendant is on trial is improperly admitted as "inextricably intertwined” when it can be readily redacted and is not essential to proof of the crime in issue. Nor does a defendant "open the door” to admission of other crime evidence in rebuttal by his testimony that he made no sale of narcotics, that he knew the person to whom he is alleged to have made the sale for which he is on trial to be an undercover officer and had assisted him until asked to engage in an illegal act, after which the officer and several of his colleagues threatened him with arrest, such rebuttal testimony being relevant only to defendant’s criminal character and not to any element of the crime charged or in refutation of any affirmative fact proved by defendant. The order of the Appellate Division should, therefore, be reversed and a new trial ordered.
I
Defendant was charged with the criminal sale of a controlled substance to an undercover officer on September 26, 1983.[1] Prior to commencement of the trial defendant’s attorney sought a ruling (see, People v Ventimiglia, 52 NY2d 350, 362) that the undercover officer not be permitted to testify, because suggestive of a prior sale, that at the time of the September 26th transaction, the officer handed defendant $300, after which defendant put the cocaine which was the subject of the indictment on the seat of the officer’s car and said, "Here’s another seven for you. It’s on the front seat. Don’t let it melt. That’s $650. See you later” (emphasis added). Notwithstanding defense counsel’s argument that mention of *115 the $300 was probative of nothing except to suggest an earlier transaction, the Trial Judge, although excluding earlier conversation concerning whether defendant was owed $250 or $300, ruled the quoted conversation admissible because "[t]hese are the actual words of the parties” and because "to take it out * * * would one, confuse the witness and two, confuse the jury.”
A further preliminary ruling was requested by defense counsel during trial in order to exclude testimony covering a later meeting of defendant and the undercover officer on the same afternoon, September 26, 1983, at a bar. Told by the officer that he had "$650 for you,” defendant, according to the officer, directed that they meet in the men’s room, where, according to the officer, the following conversation occurred: "He [defendant] said, T got another quarter.’ He said, 'This is good-quality rock.’ He says, T got to get 700 for it,’ he says, 'but it’s really good rock.’ I said, 'I only got about 700 on me. I already owe you 650 from the earlier deal today.’ He said, 'Well,’ he said, 'give me the 700. I’ll give you the rock and you can owe me the 650,’ ” after which defendant gave the officer seven grams of cocaine. Once again the Trial Judge ruled the testimony admissible because "for him to testify he paid him $650 is for the witness to lie.”
Thereafter defendant took the stand and denied ever giving or selling any narcotics to the undercover officer. His version of their relationship was that he had known the officer for about six weeks prior to September 26th so as to call him friend and had seen him around for about a year before that; that after the officer said he would lose his job with the State Police if he was convicted of driving while intoxicated and reckless driving charges for which he had been given summonses, defendant loaned the officer $500 and introduced him to an attorney; that the officer had thereafter asked him to plant a bug in the attorney’s office and to steal some papers from the attorney’s office concerning the State Police, had become incensed when defendant refused to do so and with several of his fellow officers had threatened defendant with imprisonment if he went to the FBI. On cross-examination, defendant was asked about his sale of drugs to the officer on September 8th, 16th, 20th, 21st, 22nd, 23rd and the second sale on the 26th, all of which were ruled admissible under People v Molineux (168 NY 264), and all of which defendant denied ever occurred.
*116 On rebuttal, the People were permitted, based upon the Trial Judge’s ruling that the defense was "that of a setup, which in my judgment, comes under that [Molineux] category of accident and/or mistake,” to introduce the testimony of the undercover officer and three other such officers concerning the seven sales defendant had been cross-examined about as well as the laboratory test reports of the drugs allegedly sold by him in those transactions and the evidence receipt log showing when the substances received had been taken to the State Crime Laboratory for testing. Because the judge’s charge to the jury made no specific reference to the other crimes proof, defendant’s attorney requested that the jury be instructed that the proof of uncharged crimes could be considered only as to defendant’s credibility and not as evidence of the crime charged. That request was denied, the Trial Judge offering instead to charge that the proof went to rebuttal of the claim of conspiracy and/or frameup, an offer which defendant’s attorney declined.
Convicted and sentenced to 8 Vs to 25 years, defendant appealed to the Appellate Division, which, with one Justice dissenting, modified by remitting to the trial court for resentencing, but otherwise affirmed. The dissenting Justice did not disagree with admission of the evidence of uncharged crimes, but would have reversed for denial of the requested charge that that evidence could be considered only on defendant’s credibility. We conclude that the other crimes evidence presented on the People’s direct case and on rebuttal was inadmissible and that although cross-examination as to other sales was permissible for purposes of impeachment, cross-examinatian as to the number of transactions allowed was excessive and improper. We, therefore, reverse.
II
A.
As we were at pains to point out in People v Ventimiglia (supra), the "inextricably interwoven” exception for other crimes evidence recognized in People v Vails (43 NY2d 364) "does not make evidence admissible simply because it is part of conversation other parts of which are admissible. To be inextricably interwoven in the Vails sense the evidence must be explanatory of the acts done or words used in the otherwise admissible part of the evidence” (52 NY2d, at p 361). As Vails put it, it must be "evidence relating directly to the crime *117 charged” such that "the value of the evidence clearly outweighs any possible prejudice” (43 NY2d, at p 369).
Here, the payment of $300 for a prior transaction was not necessary to comprehension of defendant’s statement with respect to the sale covered by the indictment (People v Ward, 62 NY2d 816, 818), and the prejudicial word "another” in the conversation which occurred as that sale was being made could have been redacted "without distortion of its meaning” (People v Ventimiglia, 52 NY2d, at p 362, supra). Nor was the men’s room conversation concerning the second September 26th sale probative of anything with respect to the earlier sale, except the fact that the $650 due from the earlier sale had been paid. To establish that fact, however, required nothing more than a question concerning whether the $650 referred to in the earlier conversation had been paid to defendant and the response that it had in fact been paid to him later the same afternoon.[2]
It was, therefore, error to deny defendant’s attorney’s request for the exclusionary rulings he sought.
B.
It was also error to allow cross-examination and rebuttal testimony concerning the seven other transactions listed above. Here, as in People v Rahming (26 NY2d 411), defendant confined his direct testimony to a denial that he had sold any drugs to the undercover officer and his version of his relationship with the officer. Nothing in that testimony involved the seven sales concerning which defendant was cross-examined. "Thus, it was error for the prosecutor on cross-examination to have ranged beyond the defendant’s direct examination 'in order to lay a foundation for the tainted evidence on rebuttal’ ” (People v Rahming, 26 NY2d, at p 418, supra, quoting People v Miles, 23 NY2d 527, 543). Nor can cross-examination to the extent permitted be justified as impeachment by evidence of specific acts tending to impair credibility. Although such cross-examination is not precluded by the fact that the acts inquired into are similar to the crime charged *118 (People v Pavao, 59 NY2d 282, 292), the overwhelming prejudice resulting from the number of transactions inquired into (see, People v Santarelli, 49 NY2d 241) proscribed allowance of cross-examination on all of them (see, People v Ventimiglia, supra).
In any event, an impeachment purpose could not have justified introduction of the mass of rebuttal evidence introduced,[3] for the cross-examiner is bound by the witness’ answers on such collateral matters (People v Pavao, 59 NY2d, at p 288, supra) and, as already noted, defendant denied that any sales had occurred. The other crimes evidence was improper rebuttal for the further reasons that it was neither relevant to an element of the crime with which defendant was charged nor " 'in denial of some affirmative fact which the answering party ha[d] endeavored to prove’ ” (People v Harris, 57 NY2d 335, 345, quoting Marshall v Davies, 78 NY 414, 420). Such evidence becomes admissible when a defendant concedes that an illegal transaction occurred but denies legal capacity (People v Santarelli, 49 NY2d 241, supra) or criminal intent (People v Calvano, 30 NY2d 199; People v Schwartzman, 24 NY2d 241, cert denied 396 US 846; People v Dales, 309 NY 97), or when a defendant who has previously committed the same crime using a unique modus operandi puts the People to their proof as to identity with respect to the case on trial (People v Allweiss, 48 NY2d 40). But such evidence is not admissible when it "has no bearing other than to show that defendant is of a criminal bent or character” (People v Dales, 309 NY, at p 101, supra; see, Proposed New York Code of Evidence § 404 M).
Here, defendant flatly denies ever having sold narcotics to the undercover officer and there is neither any issue concerning his identity nor anything unique involved in the procedure followed in the other seven sales. Moreover, this is not, as the People argue, a situation like the agency defense involved in People v Lam Lek Chong (45 NY2d 64), where defendant, by his claim that he was acting only as agent rather than seller, himself put in issue his own prior dealings with the purchaser, or like the entrapment defense involved in People v Mann (31 NY2d 253), where defendant’s claim that he was enticed into committing the crime made evidence of his criminal predisposition relevant.
The affirmative facts which defendant sought to prove had *119 nothing to do with the selling of drugs. His claim was that he had rejected the undercover officer’s request that he spy upon the attorney to whom he had sent the officer and that he had been apprehended and threatened by the officer and his colleagues as a result. The refutation of that claim lay in proof that defendant’s story was untrue; in proof, if you will, that the officers’ actions, intent and motives were proper, not of defendant’s criminal predisposition to sell drugs.
Nor, defendant having denied all involvement with drug sales, was there, as the Trial Judge suggested, any claim of accident or mistake on defendant’s part to be negated (cf. People v Henson, 33 NY2d 63). To the contrary, here, as in People v Molineux (168 NY 264, 300-305, supra), there being no issue concerning defendant’s intent, mistake or accident cannot furnish a pretext for the admission of evidence of other crimes.
Because defendant’s testimony put in issue not his own character or intent but the character and intent of the undercover officers, it was error to allow the cross-examination as to all seven other sales and to allow rebuttal testimony as to any of them.
Accordingly, the order of the Appellate Division should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Order reversed, etc.

. He was also indicted for criminal possession on September 30, 1983, but the two counts were severed and the sale count was tried first.

. Defendant’s attorney argues correctly that because Penal Law § 220.00 (1) defines "sell” to include "give or dispose of to another” it was not necessary to prove payment (see, People v Lam Lek Chong, 45 NY2d 64, 72), but payment having in fact been made, the People were entitled to prove the payment as a fact directly related to the sale for which defendant was on trial.

. The People’s direct case took 139 pages of transcript; its rebuttal, 294.